UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(at Knoxville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 12-154-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES AMOS PARKER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant James Amos Parker's motion to dismiss the Indictment. [Record No.14]  The motion was referred to United States Magistrate Judge H. Bruce Guyton to conduct an evidentiary hearing and issue a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A).  The parties waived oral argument on the motion.  On March 18, 2013, the magistrate judge issued his report, recommending that the defendant's motion be denied.  [Record No. 20]  After reviewing the Report and Recommendation and having considered the defendant's objections, the Court will deny the motion to dismiss.

## I.

The parties acknowledge that the relevant facts of this case are not disputed.  They are summarized by the United States as follows:

> The defendant, James Amos Parker, responded to an ad posted by law enforcement on www.collarme.com, which is an online community/social media website focusing on bondage/discipline, domination/submission, and sadism/masochistic lifestyles.  The profile law enforcement created was an

-1-

account for dixieleemomof1 that said she was a thirty-four (34) year old submissive female living in the Tennessee [area] who was bisexual, Caucasian, and was actively seeking dominant and submissive men. The profile text read: "Family Love ;) Lonely mom of 1 near knoxville with beautiful daughter."

2.      The defendant, whose profile name on www.collarme.com was meatSeeker1, initiated conversation with the mother.[1] Over a period of time from September 19, 2012 through September 22, 2012, approximately 115 messages are exchanged. Mother tells defendant she is submissive and wants her daughter to be as well. Defendant tells mother he likes that and can train both of them to be submissive together. Defendant asks if either mother or the daughter have experience. The mother responds they do not but asks the defendant to tell her "what i need to know to prepare her". The defendant responds: "just that you are both to serve Me completely. and it is ok for her to be nervous, even scared, but that everything will be ok. That you and her have to learn how to serve and please Me." The communication continues where the defendant is asking questions about the mother and daughter. Defendant mentions on several occasions he wants to meet with the mother to discuss the sex in more detail. . . .

Communication ends for the night and begins again the next day. The defendant asks: "Have you 2 talked? What have you decided?" Mother responds: "I talked to her, we know what we want." There is more back and forth discussion about sending pictures, trusting each other, when to give out phone numbers and where and when to meet. Mother lets the defendant know she is having a lot of other offers for the sexual liaison from people. Mother also indicates she is unsure if she wants to continue any sexual relationship after the weekend. To which the defendant responds: "Ok Listen. Stop worrying about anyone else on here. you want and need someone that can take you past anything you have done before. . . . So lets do this and then just see how the weekend goes and than [take it] from there. Just give me the address where you are and you be naked when I get there."

They decide to meet that evening even though both are unsure about trusting the other and discuss the lack of trust with one another. Mother then says: "Let me think about it for a few minutes and talk to her k. You could come tonight right[?]" The defendant replies: "yes I can come tonight. is she in charge of you? Why do you have to talk to her about this?" To which [the mother] responds: Because this is something I want for her and me. She is 12 no she doesn't control me! One thing though, do [you] have any of that stuff that numbs

---

1       For the purposes of this opinion, the Court will refer to the fictitious entity dixieleemomof1, and the law enforcement officer that took on that persona, as the "mother."

-2-

the skin a little for her?" The conversation continues about meeting that night and a specific location. Defendant is given the address of the house [where] the mother is staying with the daughter. After an hour the defendant claims he can't find the location and requests that the meet at the closest store and then he follow the two home. Mother claims it is now too late and the child has gone to bed. They plan to meet the following day. On September 22, 2012 the conversations resume. Defendant continues to express his concern for just pulling into the driveway of the mother. Defendant decides on a parking lot and tells mother to look for a blue Saturn. Mother asks for a code in case there is another man in a blue Saturn. Defendant replies: "couple of cuties." Defendant tells mother the address of the parking lot which is near the address of where the mother and daughter are staying.

3. The law enforcement decoys of mother and daughter arrive and park near a blue Saturn at the arranged meeting location. The defendant approaches the driver's side door, where he is arrested by a take down team.

[Record No. 17, pp. 2-4 (footnotes omitted)] Parker did not object to the United States' statement of facts. However, he clarified that the meeting in the parking lot was set up after he emailed the mother to say: "you understand though that simply due to the nature of things I am leery to just pull in that house. So lets meet some place. Me and you." [Record No. 18, p. 1]

Parker was indicted on November 6, 2012, for Attempted Coercion and Enticement of a Minor, pursuant to 18 U.S.C. § 2422(b). The one-count Indictment charges that Parker "used a facility and means of interstate commerce to attempt to knowingly persuade, induce, entice, and coerce an individual who has not attained the age of 18 to engage in sexual activity." [Record No. 1] Parker filed his motion to dismiss on January 23, 2012. After being fully briefed, the motion was referred to United States Magistrate Judge H. Bruce Guyton to conduct an evidentiary hearing, but the parties waived oral argument. On March 18, 2013, the magistrate judge issued his report, recommending that the defendant's motion be denied. [Record No. 20]

-3-

Parker filed his objections to the Report and Recommendation on April 1, 2013, and the government responded on April 8, 2013. [Record Nos. 21, 22]

## II.

Based on the facts outlined above, Magistrate Judge Guyton concluded that the defendant's motion to dismiss should be denied. The magistrate judge first analyzed Parker's motion to determine whether it raised issues that could be resolved on a motion to dismiss under Rule 12(b) of the Federal Rules of Criminal Procedure. He then

> refine[d] the Defendant's arguments into four specific issues: (i) whether communicating with an intermediary is a violation of § 2422(b); (ii) whether the Government must prove that the Defendant intended to persuade the minor through the use of an intermediary or whether it is sufficient to prove that the Defendant intended to persuade the adult to grant access to the minor; (iii) whether the Defendant had the requisite intent to commit a violation of § 2422(b); and (iv) whether the Defendant's actions constitute a substantial step toward violating § 2422(b).

[Record No. 20, p. 5]

Magistrate Judge Guyton concluded that the first two issues present pure questions of law. However, with respect to the third and fourth issues, Parker essentially "requests that the Court weigh the evidence against him." [*Id.*, p. 7] Motions to dismiss the indictment are "capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). Because the questions of Parker's intent and whether he took a substantial step are issues for the jury, Magistrate Judge Guyton found that those matters are not properly before the Court. *See United States v. Luxenberg*, 374 F.2d 241, 249 (6th Cir. 1967) ("Where a criminal intent is one of the elements of an offense, its existence is a question of fact to be determined by the trier of facts."); *United States v. Silvius*, No.

-4-

1:12CR172, 2012 WL 5878841, at *2 (N.D. Ohio Nov. 21, 2012) (explaining that a motion to dismiss "is not the appropriate stage of the proceedings to challenge the strength of the government's case"). Therefore, the Report and Recommendation only addressed Parker's substantive arguments regarding whether: (1) a person can violate § 2422(b) by communicating with an adult intermediary, and (2) the Government must prove that the Defendant intended to persuade the minor through the use of an intermediary or whether it is sufficient to prove that the Defendant intended to persuade the adult to grant access to the minor. [Record No. 20, p. 8]

Parker argues that to violate § 2422(b), a person must directly persuade, induce, entice, or coerce a minor — or someone that he believes to be a minor — over the internet or telephone. He maintains that because his "only internet and telephone communications were with an individual who represented herself as being an adult," he cannot be convicted under § 2422(b). [Record No. 14, p. 5] After reviewing Sixth Circuit precedent, as well as the law from other circuits, Magistrate Judge Guyton concluded that "§ 2422(b) can be violated by communicating with an adult intermediary." [Record No. 20, p. 11]

Additionally, Parker asserts that, to convict him under § 2422(b), the United States must prove that he "intended to cause the assent on the part of the minor, not that he acted with the specific intent to engage in sexual activity." [Record No. 14, p. 19] He contends that the various cases in which courts found that defendant had violated § 2422(b) by communicating with an adult were based on the theory "that the defendant's communication through the adult intermediary sought to cause the assent of the minor to the defendant's proposals." [Record No. 14, p. 19] Parker maintains that the facts of this case demonstrate that he did not intend to

-5-

directly or indirectly "cause the assent of the minor" to his proposals. [*Id.*, p. 20] In other words, he argues that, because he did not ask the adult to convince the minor to engage in sexual activity nor did he seek to have any of his communications with the adult passed to the minor, the Indictment must be dismissed. [Record No. 20, p. 12]

Magistrate Judge Guyton also rejected this argument. After acknowledging that commission of the sexual act itself is not the criminal conduct proscribed by the statute, he concluded that, to violate § 2422(b), it is sufficient to persuade the adult to grant access to the minor. [*Id.*, p. 13] The magistrate judge found *United States v. Caudill*, 709 F.3d 444 (5th Cir. 2013), to be persuasive. In that Fifth Circuit decision, the court held that a defendant violates § 2422(b) by using the internet "in an attempt to have an adult intermediary persuade, induce, or entice minors to have sexual relations with [the defendant]." *Id.* at 446. Accordingly, the magistrate judge found that as long as the government can prove that Parker intended to indirectly secure a child's assent to unlawful sexual activity through an adult intermediary, it is irrelevant whether Parker asked the mother to pass along any communications to her daughter. [Record No. 20, p. 14]

### III.

Parker has objected to Magistrate Judge Guyton's Report and Recommendation. [Record No. 21] Specifically, he objects to conclusions that: (1) the issue of whether Defendant's actions constitute a substantial step is not properly before the Court on the motion to dismiss; (2) § 2422(b) can be violated by communicating with an adult intermediary; and (3) a defendant can violate § 2422(b) by persuading an adult to grant access to the minor only and there does not

-6-

have to be a showing whether the defendant tried to persuade the minor through the use of an adult intermediary.[2] [*Id.*, p. 1] The Court will make *de novo* determinations on those portions of the magistrate judge's recommendations to which Parker objects. 28 U.S.C. § 636(b)(1)(C). However, after reviewing the record under this standard, the undersigned is in complete agreement with magistrate judge's recommended disposition.

## A. Adult Intermediary

Parker objects to Magistrate Judge Guyton's analysis of the "intermediary theory." Although he acknowledges that significant case law from other circuits has developed against his argument, he maintains that these decisions are inconsistent with the plain language and legislative history of the statute. [Record No. 21, p. 5] In addition to the arguments contained in his objections, Parker incorporates by reference the discussion of this issue contained in his motion to dismiss. [*Id.*, p. 4; *see* Record No. 14, pp. 5-13]

This case "presents the issue of whether the statute can be violated when the agent poses as another adult, and no communication with even a fictional minor is at issue." [Record No. 21, p. 5] Title 18, section 2422(b) of the United States Code provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). To establish a violation of this statutory section, the government must prove that the defendant: (i) used a facility of interstate commerce; (ii) to knowingly persuade,

---

2    The Court will address the Parker's objections out of order.

induce or entice, or to attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature. *United States v. Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006).

Parker's argument regarding the use of an adult intermediary is two-pronged, although it is not clearly delineated as such in his motion or objections. First, the defendant asserts that § 2422(b) only prohibits communications with actual minors, and any inducement or attempted inducement aimed at an adult is not violative of the statute regardless of the subjective intentions of the defendant. He appears to acknowledge that this argument is foreclosed in every circuit that has considered the issue. [Record No. 21, p. 5] However, to the extent that Parker asks the Court to interpret § 2422(b) to prohibit only persuasive communications with actual minors, his argument is without merit. It is well-established that § 2422(b) "criminalize[s] conduct even when an actual minor is not on the receiving end of the communications." *United States v. Hackworth*, 483 F. App'x 972, 978 (6th Cir. 2012).

The majority of cases construing § 2422(b) involve undercover detectives posing as minors, or "decoys," on the internet.[3] And while instructive, those cases do not address the second prong of Parker's argument: whether the statute prohibits communications between the defendant and an adult intermediary — that is, communications that were not between the defendant and the person [he] sought to persuade, induce, or entice. [Record No. 14, pp. 12-13]

---

3    A "decoy" is an adult posing as a minor, *see, e.g.*, *United States v. Pawlowski*, 682 F.3d 205, 211 (3d Cir. 2012), whereas an "intermediary" is an adult with access to a minor or an undercover detective posing as an adult with access to a minor. *See, e.g.*, *United States v. Laureys*, 653 F.3d 27, 33 (D.C. Cir. 2011) (noting that "every circuit to consider the issue has concluded a defendant can violate § 2422(b) by communicating with an adult intermediary rather than a child or someone believed to be a child").

Parker maintains that the statute cannot be violated by a defendant's communications with someone that he knows or believes to be an adult. Yet several courts — including a district court within this circuit — have concluded that § 2422(b) can be violated even if a defendant "did not converse with an actual minor or with anyone posing as a minor child." *United States v. Saucedo*, No. 07-20286, 2007 WL 3124658, at *1 (E.D. Mich. Oct. 25, 2007). For instance, in *United States v. Berk*, 652 F.3d 132 (1st Cir. 2011), the First Circuit held that "a defendant can be convicted even if the relevant communications are with an intermediary." *Id.* at 140. Similarly, the Second Circuit in *United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010), upheld the district court's conclusion that the defendant could "commit criminal enticement pursuant to § 2422(b) by communicating with a person he believed to be the adult guardian of a minor." *Id.* at 165. However, Parker insists that these courts "have failed to fully consider the legislative history of the statute." [Record No. 21, p. 5]

Parker argues that the legislative history of § 2422(b) requires the interpretation of the statute to prohibit only the direct persuasion or enticement of minors. [Record No. 14, p. 11] He points out that much of the discussion during the Senate Judiciary Committee hearing focused on parents' control over their children's access to the internet and that the "conference committee reports both focused on communications with minors."[4] [*Id.*, pp. 11-12] The

---

4     The defendant compares § 2422(b) to 18 U.S.C. § 875, which prohibits the transmission in interstate commerce of any threat to kidnap or injure a person. Courts have held that communications "must contain threats directed toward the victim" to violate § 875. *United States v. Pacucci*, 943 F.2d 1032, 1036 (9th Cir. 1991). He maintains that, by analogy, "a charged communication under § 2422(b) must contain a message of persuasion, inducement, enticement, or coercion to the purported victim." [Record No. 14, p. 11] However, § 2422(b) criminalizes any "intentional attempt to achieve a mental state — a minor's assent." *Berk*, 652 F.3d at 140 (internal quotation marks omitted). Thus, as long as a defendant uses the internet to bring about the enticement of a minor, it is irrelevant whether he communicates that message directly to the intended victim.

defendant also notes that "Congress did not proscribe all communications 'for the purpose of conducting, promoting, or carrying [out]' the ultimate objective of illicit sexual contact." [*Id.*, p. 10 (quoting 18 U.S.C. § 1342)] Thus, he maintains, "Congress did not mean to criminalize communications with a minor's parents." [*Id.*, p. 12]

The magistrate judge rejected Parker's argument based on the analysis in *United States v. Tykarsky*, 446 F.3d 458 (3d Cir. 2006). [Record No. 20, p. 11] In *Tykarsky*, the Third Circuit affirmed the district court's denial of the defendant's motion to dismiss after he was convicted for attempting to persuade or induce an undercover agent posing as a fourteen-year-old girl. Because the *Tykarsky* court considered a different question than that presented here, the case is not directly on point. However, the analysis is instructive. The court explained that the "plain language of the statute, which includes an 'attempt' provision, indicates that something less than the actual persuasion of a minor is necessary for conviction." 446 F.3d at 466. It concluded that the "attempt provision is therefore most naturally read to focus on the subjective intent of the defendant, not the actual age of the victim." *Id.* at 467. Regarding the legislative history of the statute, the court found that § 2422(b) was enacted as part of "'a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computers.'" *Id.* (quoting H.R. Rep. No. 105-557, at 10 (1998)). As a result, the court concluded that Congress did not intend to permit defendants to raise the absence of an actual minor as a defense to a § 2422(b) charge.

For the same reasons that courts have consistently found § 2422(b) to apply to cases involving adult decoys, the legislative history does not foreclose the application of the statute

to a defendant's communications with adult intermediaries. As the Third Circuit explained in *United States v. Nestor*, 574 F.3d 159 (3d Cir. 2009): "The [1998] amendment to § 2422(b) was [] part of an overall policy to aggressively combat computer-related sex crimes against children. It would be wholly inconsistent with the purpose and policy of the statute to allow sexual predators to use adult intermediaries to shield themselves from prosecution." *Id.* at 162; *see also United States v. Cote*, 504 F.3d 682, 686 (7th Cir. 2007) ("Legislative history shows that the purpose of Section 2422(b) was to equip law enforcement with the tools necessary for combating internet child predators."). Because the "legislative history is replete with congressional recognition that young children need special protection against sexual exploitation," *United States v. Daniels*, 685 F.3d 1237, 1248 (11th Cir. 2012), the Court rejects Parker's assertion that the charges against him are inconsistent with the underlying purpose or background of § 2422(b).[5]

Moreover, the plain language of the statute contemplates the circumstances at issue in this case. In *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004), the defendant was convicted under § 2422(b) for engaging in an online chat with an undercover detective posing as the adult mother of a thirteen-year-old. *Id.* at 1284. On appeal, the Eleventh Circuit rejected the defendant's argument that "he could not have intended to induce a minor to engage in illegal sex acts without actually speaking to a person he believed to be a minor." *Id.* at 1287. Looking to

---

5       The Court agrees with Parker's contention that it is the persuasive or coercive purpose of a communication that makes it prohibited under § 2422(b). [Record No. 14, p. 13 ("Congress did not criminalize the subject matter of the communications but focused, instead, on the function of the communications.")] However, it does not follow from that premise that only "internet communications that [are] directed to minors" can function as persuasion, inducement, enticement or coercion. [*Id.*]

the plain language of § 2422(b), the court explained that "'[i]nduce can be defined in two ways. It can be defined as '[t]o lead or move by influence or persuasion; to prevail upon,' or alternatively, '[t]o stimulate the occurrence of; cause.'" *Id.* The court then adopted the latter definition with respect to violations of § 2422(b), and held that, "[b]y negotiating with the purported father of a minor, [the defendant] attempted to stimulate or cause the minor to engage in sexual activity with him." *Id.*

In *Nestor*, the Third Circuit conducted a similar analysis with respect to the statutory term "persuade," finding that it "means '(1) to move by argument, entreaty, or expostulation to a belief, position, or course of action; (2) to plead with.'" 574 F.3d at 162 N.4 (quoting Merriam-Webster's Collegiate Dictionary 865 (10th ed. 1993)). The court went on to discuss the effect of this definition on the interpretation of § 2422(b):

> It is not at all evident that persuasion, so defined, requires direct communication. Businesses and individuals regularly seek to persuade others through advertising intermediaries and negotiating agents. Sexual predators can and do — as this case shows — attempt to persuade children to engage in sexual activity through the victim's parents or guardians.

574 F.3d at 162 n.4.

The definition of "coerce" is particularly relevant to the circumstances of this case. The term "coerce" means: (1) "to restrain or dominate by force"; (2) "to compel to an act or choice"; or (3) "to enforce or bring about by force or threat." Webster's Ninth New Collegiate Dictionary 256 (9th ed. 1985). The second interpretation of "coerce" is particularly fitting where a person seeks access to a minor through the child's parent or guardian. Keeping this definition in mind, it is well within the purview of § 2422(b) to criminalize a defendant's communication with an

-12-

adult intermediary for the purpose of persuading that adult to compel a minor child into sexual acts. The statute does not "exempt[] sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and *obey* her parents." *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007) (emphasis added). In short, the plain language of the statute prohibits a defendant's attempt to persuade, induce, entice, or coerce a minor child through online communication with an adult intermediary.[6]

Further, interpreting the statute in the manner advocated by Parker would lead to an absurd result. *See United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940) (explaining that a court should avoid construing a statute in a way that "leads to absurd or futile results"). As explained by the Second Circuit,

> [p]otential victims of enticement may be too young to use the Internet or otherwise communicate directly with strangers without their parents' supervision. Criminals who target such children will perforce operate through intermediaries. If we were to agree with [the defendant's] assumption that the statute sought to protect only those minors who are old enough to sign into a chat room, we would be ignoring Congress' objective of protecting vulnerable children. We conclude that placing a sexual predator's communications with an adult intermediary beyond the reach of the statute would be an illogical result.

*Douglas*, 626 F.3d at 165; *see also Nestor*, 574 F.3d at 162 ("To accept Nestor's reasoning and say that contact through an adult intermediary rather than directly with a child means there has been no crime would be to place beyond the reach of § 2422(b) those who prey on the particularly young."). Therefore, the fact that Parker communicated with an adult intermediary

---

6    For the same reasons that § 2422(b) criminalizes communications with decoys and does not require the existence or presence of an actual minor, the adult intermediary on the receiving end of a defendant's communications need not be the actual parent or guardian of the minor that the defendant seeks to persuade.

— rather than a minor or a person that he believed to be a minor — does not remove his conduct from the scope of § 2422(b).

## B.     Persuasion

Parker also objects to the magistrate judge's conclusion that there is sufficient evidence to support a conviction even if the government can only prove that Parker intended to persuade the adult intermediary to grant him access to the minor. The magistrate judge characterized this issue as "whether the Government must prove that the Defendant intended to persuade the minor through the use of an intermediary or whether it is sufficient to prove that the Defendant intended to persuade the adult to grant access to the minor." [Record No. 20, p. 5] In his objections to the Report and Recommendation, Parker asks "where in the e-mails cited to the Court does Mr. Parker attempt to persuade, induce, entice, or coerce a minor [into] sexual activity?" [Record No. 21, p. 6] He asserts that "there is no evidence of use of the telephone or internet as a means of persuasion." [*Id.*, p. 7]

As discussed above, § 2422(b) "criminalizes obtaining or attempting to obtain a minor's assent to unlawful sexual activity. Such assent might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity." *Douglas*, 626 F.3d at 164. The First Circuit has found that communications with the parent of a minor child can be "part of an attempt to achieve the requisite mental state in the minor." *Berk*, 652 F.3d at 140. Additionally, in a recent case from the Fifth Circuit, the court reviewed caselaw from five other circuits to determined that "§ 2422(b) was intended to capture conduct that indirectly secured a child's assent to unlawful sexual activity through an adult intermediary." *Caudill*, 709 F.3d

at 446-47. It concluded that the defendant violated § 2422(b) even though he "did not seek to have any of his communications with the adult passed on directly to a child." *Id.* at 446. In the present case, the magistrate judge correctly found that the defendant need not communicate directly with the minor or decoy to violate § 2422(b). Rather, the defendant can violate the statute by communicating with an adult who has access to a minor child if he seeks to have that person persuade, induce, or entice the minor on his behalf.[7]

Parker sought to engage in sexual activity with a (fictional) twelve-year-old girl by communicating with her mother online. In doing so, he relied on the mother's "influence and control over her daughter[]." *Spurlock*, 495 F.3d at 1014. The conversations were more than merely discussions with another "adult[] about sexual contact with children." [Record No. 21, p. 7] Indeed, Parker provided detailed instructions to the mother regarding what to tell her daughter to "prepare her" for the liaison, and urged her several times to set a date and time for them to meet. [Record No. 17, p. 2] Later, he asked if the mother had talked to her daughter about the idea and inquired: "What have you decided?" [*Id.*] Finally, Parker's efforts to have the mother coerce the daughter on his behalf became evident when he challenged the mother's statement that she needed to discuss things with her daughter by asking: "is she in charge of you? Why do you have to talk to her about this?" [*Id.*, p. 3] These internet communications were clear attempts to persuade, induce, or coerce a minor through her mother. Because "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the

---

7       Because the facts of this case demonstrate that Parker sought to influence the fictitious minor through the use of an adult intermediary, the Court need not determine whether evidence of an attempt only to persuade the adult to grant access to the minor would be sufficient to support a conviction under § 2422(b).

performance of the sexual acts themselves," *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000), the fact that the "meeting where sexual contact was to occur was never set up" is irrelevant. [Record No. 21, p. 7]

### C.  Substantial Step

Parker also objects to the magistrate judge's recommendation regarding the propriety of determining, at this stage of the proceeding, whether the evidence establishes that Parker took a substantial step toward violating § 2422(b).[8] Parker maintains that "the undisputed facts of this case show that Mr. Parker did not arrive at any location for the purpose of having sex with a minor. Rather, he requested the opportunity to meet the mother, by herself. . ." [Record No. 21, p. 2] Thus, the defendant maintains that the evidence is insufficient to demonstrate that he made a substantial step. Because the "presence of a 'substantial step' toward the crime is necessary for the government to gain a conviction in this case," Parker contends that the Indictment should be dismissed. [*Id.*, p. 4]

Under Rule 12 of the Federal Rules of Criminal Procedure, a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *Jones*, 542 F.2d at 664. However, "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the

---

8      Parker does not object to Magistrate Judge Guyton's determination that the issue of Parker's intent is a matter for the trier of fact. Indeed, he asserts that the "question of whether Defendant had the necessary 'intent' to violate the statute should not be intertwined with the very different determination of whether a 'substantial step' occurred in the case." [Record No. 21, p. 3] Therefore, the Court need not conduct a *de novo* review of the magistrate judge's findings on this issue, and will adopt the Report and Recommendation's conclusion that Parker's arguments regarding intent are "not properly before this Court." [Record No. 20, p. 7 (declining Parker's request to "weigh the evidence against him")]

offense charged in an indictment, the Court is reviewing a question of law, not fact." *United States v. Vertz*, 40 F. App'x 69, 70 (6th Cir. 2002); *see Jones*, 542 F.2d at 665 (explaining that motion to dismiss is appropriate if the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the Court in deciding the legal issue raised by the motion"). Therefore, a district court "may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).

Here, the magistrate judge concluded that Parker's "substantial step" argument is merely a disguised request for the Court to evaluate the strength of the government's case. The undersigned agrees. Although the facts of this case are undisputed, whether Parker took a substantial step toward commission of the crime is necessarily a factual inquiry that is to the jury. Therefore, the matter is not appropriate for resolution on a motion to dismiss under Rule 12(b).

Even if the Court were to consider Parker's argument at this stage of the proceeding, he would not be entitled to dismissal of the Indictment because there is sufficient evidence to convince a reasonable juror that Parker's actions constituted a substantial step toward violating § 2422(b). To prove an attempt to violate a federal criminal statute, the United States must establish two essential elements: (1) the intent to engage in the prohibited criminal activity, and (2) the commission of an overt act that constitutes a substantial step towards commission of the proscribed criminal activity. *United States v. Strickland*, 342 F. App'x 103, 112 (6th Cir. 2009)

-17-

(citing *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989)). The substantial step must "consist of objective acts that mark the defendant's conduct as criminal in nature." *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999); *see United States v. Wesley*, 417 F.3d 612, 619 (6th Cir. 2005) ("This objective conduct must unequivocally corroborate the required subjective intent to engage in the criminal conduct.").

Citing *Saucedo* and *Nestor*, the magistrate judge "acknowledge[d] that other courts have ruled that similar actions constituted a substantial step toward violating § 2422(b)." [Record No. 20, p. 8] However, Parker asserts that these cases are distinguishable. In *Saucedo*, "the Defendant at issue 'encouraged' the government agent to bring the fictional minor child to Colorado," and *Nestor* involved a defendant who "arranged for a sexual encounter with the children and discussed ways to avoid police." [Record No. 21, p. 4] Parker maintains that, because he specifically asked to meet only the mother in the parking lot, and "no meeting for sexual relations with the fictitious minor and the fictitious adult was ever set up," he did not take the substantial step that was present in *Saucedo* and *Nestor*. [*Id.*] Rather, he asserts that this case is more closely aligned with the facts of *United States v. Nitschke*, 843 F. Supp. 2d 4 (D.D.C. 2011).

Parker relies on *Nitschke* for his argument that the evidence does not support a finding that he took a substantial step toward violating § 2422(b).[9] In that case, the defendant was arrested after traveling from Virginia to Washington, DC to meet with a fictitious minor and an

---

9     The *Nitschke* court acknowledged that a defendant can violate § 2422(b) through indirect persuasion. 843 F. Supp. 2d at 11 ("The question, therefore, is whether Defendant intended to *indirectly* persuade a minor through [the undercover detective]." (emphasis in original)).

undercover detective posing under the screen name "DC Ped." The defendant "met" the

detective in an online chat room "frequented by individuals who have a sexual interest in

prepubescent children." *Id.* at 6. After the defendant expressed an interest in meeting the DC

Ped, the detective offered that he was planning to meet with a 12-year-old boy and suggested that

the defendant join them. The court found that the undisputed facts established that the defendant

> never sought Detective Palchak's help in procuring the fictitious minor. He did
> not ask Palchak to pass along any communication whatsoever to the minor. He
> did not make any promises to the minor through Palchak. He did not offer any
> money or anything else of value, and he did not invite Palchak or the minor
> anywhere.

*Id.* at 13. Explaining that these facts distinguished this "unusual" case, the court concluded that

no reasonable juror could find that the defendant had the requisite intent to persuade, induce,

entice, or coerce a minor using interstate commerce. *Id.* at 9. Based on the same reasoning, the

court concluded that "there is similarly nothing to show a substantial step in enticing a minor."

*Id.* at 15. As a result, the court granted the defendant's motion to dismiss the indictment.

*Nitschke* is distinguishable from the facts of this case. Unlike the defendant in *Nitschke*,

Parker sought the mother's help in procuring the fictitious minor. Indeed, when the mother

indicated that her ad had received interest from other people on the site, he actively pressured

her to choose him over the others, and urged her to give him her address. [*See* Record No. 17,

p. 3] Moreover, as discussed above, Parker asked the mother to pass along a communication to

the fictitious minor when he instructed her to tell her daughter: "you are both to serve Me

completely. and it is ok for her to be nervous, even scared, but that everything will be ok. That

you and her have to learn how to serve and please Me."[10] [*Id.*, p. 2]  Finally, although he did not invite the mother and daughter anywhere, he did make at least one attempt to meet with both of them — on September 21, 2012, when he requested "that they meet at the closest store and then he follow the two home." [*Id.*, p. 3]  Even if this were not the case, the fact that Parker requested a meeting with the mother only on September 22, 2012 is not dispositive to this analysis.  *See United States v. Berk*, 652 F.3d 132, 135 (1st Cir. 2011) (affirming conviction of defendant charged with attempting to violate § 2422(b) where he communicated only with the minor's father and arranged to meet just the father in a Dunkin Donuts parking lot); *see also Nitschke*, 843 F. Supp. 2d at 16 ("A § 2422(b) violation occurs, if at all, before any travel is undertaken; indeed, no travel is even necessary.").

Therefore, even if this issue were appropriate to address at this stage of the proceeding, the evidence would support a conclusion that Parker had taken a substantial step toward his attempt to violate § 2422(b).  His communications alone constitute "objective acts" that aim to persuade, induce, or coerce the fictitious minor into engaging in sexual activity, and thus "mark [his] conduct as criminal in nature." *Bilderbeck*, 163 F.3d at 975.  In short, to the extent that he sought to bring about a sexual encounter with a minor through that minor's mother, Parker's online chats with the mother were, in and of themselves, a substantial step toward commission of the acts prohibited by § 2422(b).  *See Spurlock*, 495 F.3d at 1014 (finding that defendant "intended to entice minor girls to have sex with him, and that his conversations with their

---

10    The fact that he intended and expected her to relay this message to her daughter is emphasized by the fact that he later asked, "Have you 2 talked?  What have you decided?"  [Record No. 17, p. 3]

purported mother were a substantial step to that end.").[11]  Accordingly, the Court will deny

Parker's motion to dismiss the Indictment.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      The Report and Recommendation of United States Magistrate Judge H. Bruce

Guyton [Record No. 20] is **ADOPTED** and **INCORPORATED** herein by reference.

2.      The Defendant's objections to the magistrate judge's Report and Recommendation

[Record No. 21] are **OVERRULED**.

3.      The Defendant's Motion to Dismiss [Record No 14] is **DENIED**.

This 10th day of April, 2013.



Signed By:

*Danny C. Reeves*

**United States District Judge**

---

11      In *Spurlock*, the undercover agent "pretended to allow the girls to chat directly with" the defendant. 495 F.3d at 1012.  Therefore, the "substantial step" in that case was more pronounced.  However, Parker's acts are not diminished just because he could have done more.  There are many possible acts and behaviors between the point at which a defendant has taken a substantial step toward committing a crime and the point at which the actual crime is committed.